UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

BRADLEY MALWITZ,

        Plaintiff,

v.                                        Case No. 21-cv-404-bhl

JON NOBEL,

        Defendant.

## DECISION AND ORDER

Plaintiff Bradley Malwitz, who is representing himself, is proceeding on a First Amendment claim that Defendant Jon Nobel permanently and arbitrarily denied him visitation with his wife at Kettle Moraine Correctional Institution. Dkt. Nos. 14-15. This matter comes before the Court on Defendant's motion for summary judgment filed March 22, 2022; Plaintiff's motion for summary judgment filed May 16, 2022; and Plaintiff's motion for extension of time filed June 21, 2022. Dkt. Nos. 36, 45, & 51. Because Malwitz's visitation restriction was reasonably related to a legitimate penological purpose, and because Malwitz fails to present evidence undermining Defendant's stated purpose, the Court will grant Defendant's motion for summary judgment, deny Malwitz's motion for summary judgment, and dismiss the case.

## PROCEDURAL BACKGROUND

At the onset of the case, the Court entered a scheduling order setting a discovery deadline of February 22, 2022 and dispositive motions deadline of March 22, 2022. Dkt. No. 19. Defendant timely filed a motion for summary judgment on March 22, 2022, *see* Dkt. No. 36, and the Court

entered a notice and order the following day directing Malwitz to respond to the motion or request an extension of time to do so by April 21, 2022. Dkt. No. 40.

A few weeks later, on April 4, 2022, Malwitz filed a document labeled "motion for extension of time summary judgment." Dkt. No. 41. The Court granted the motion through a text-only order and extended the summary judgment response deadline to May 12, 2022. Dkt. No. 42. On May 16, 2022, Malwitz filed his summary judgment response materials, along with his own motion for summary judgment. Dkt. Nos. 43-49. Defendant objected to Malwitz's motion for summary judgment as untimely filed. Dkt. No. 50 at 3. About three weeks later, on June 21, 2022, Malwitz filed another motion for extension of time requesting that his motion for summary judgment be considered timely filed. Dkt. No. 51. Defendants again oppose the motion as untimely filed. Dkt. No. 54.

To acquire an extension of time *after* a deadline has passed, Malwitz must show "excusable neglect" for an untimely request. *See* Fed. R. Civ. P. 6(b)(1)(B); *see also Bowman v. Korte*, 962 F.3d 995, 998 (7th Cir. 2020). Malwitz states that he unable to request an extension of the dispositive motions deadline *before* the March 22, 2022 deadline because "all operations including library functions were suspended" during that time. Dkt. No. 51. Assuming this is true, Malwitz has satisfied excusable neglect standard because he could not have submitted his filing to the Court. Defendant points out that Malwitz waited over three months past the dispositive motions deadline to file his motion for extension of time, but it appears Malwitz misunderstood the Court's April 6 text-only order, which only extended the summary judgment response deadline (not the dispositive motions deadline). Malwitz states that he believed both deadlines were extended through the text-only order. *See* Dkt. No. 53, ¶4. Malwitz explains he refiled his motion for extension of time after discovering through Defendant's objection that the dispositive motions

2

deadline had not been extended. *Id.*, ¶6. Given Malwitz's confusion, and because Defendant will not be prejudiced by the extension of time, the Court will grant the motion for extension of time and will consider Malwitz's motion for summary judgment timely filed.

**UNDISPUTED FACTS**

Malwitz is an inmate at the Kettle Moraine Correctional Institution (KMCI), where Nobel is Warden. Dkt. No. 38, ¶¶1-2. On May 16, 2021, Malwitz's wife submitted a Visitor Questionnaire to request in-person visits. *Id.*, ¶8. Malwitz's parole agent and social worker both recommended denying the request because his extended supervision had been revoked on September 29, 2020 due to domestic violence against his wife.[1] *Id.*, ¶¶11-12. The Corrections Program Supervisor (CPS) Gessner (not a defendant) reviewed both recommendations and denied the request on June 11, 2021 based on concern that Malwitz may further victimize his wife through in-person visits. *Id.*, ¶13. CPS Gessner noted that, if Malwitz completed Domestic Violence Programming, he could seek reconsideration of the decision. *Id.* As a result of the decision, Malwitz could not see his wife for in-person visits, but he could still call and write letters. *Id.*, ¶21.

On June 21, 2021, Malwitz filed an inmate complaint regarding the issue. *Id.*, ¶14. He noted that his state court criminal case was resolved with only a disorderly conduct conviction (meaning, no domestic violence conviction). *Id.* The Institution Complaint Examiner (ICE) investigated the inmate complaint, reviewed Malwitz's revocation summary, and discovered through the investigation that Malwitz had damaged his wife's vehicle, slammed her head on the

---

[1] *See State of Wisconsin v. Bradley Malwitz*, WISCONSIN CIRCUIT COURT ACCESS, https://wcca.wicourts.gov/caseDetail.html?caseNo=2016CF000029&countyNo=59&index=0&mode=details (last visited October 24, 2022); *see also State of Wisconsin v. Bradley Malwitz*, WISCONSIN CIRCUIT COURT ACCESS, https://wcca.wicourts.gov/caseDetail.html?caseNo=2016CF000285&countyNo=59&index=0&mode=details (last visited October 24, 2022).

floor, punched her in the nose (causing a broken nose and two black eyes), broke her cellphone, struck her, and kicked in the doors of her residence. *Id*., ¶15. The ICE stated that, regardless of the outcome of the state court criminal case, there was documentation of domestic abuse against his wife, and Malwitz still had not completed Domestic Violence Programming. *Id*., ¶16. The ICE recommended dismissing the inmate complaint and noted that Malwitz could request reconsideration after he completed Domestic Violence Programming. *Id*. Defendant, acting as the Reviewing Authority (RA), agreed with the ICE's recommendation and dismissed the inmate complaint on June 28, 2021. *Id*., ¶17; *see also* Dkt. No. 39-1 at 4.

Malwitz appealed the inmate complaint through the Inmate Complaint Review System (ICRS). Dkt. No. 38, ¶¶18-23. While the appeal was pending, the institution increased its capacity to conduct Zoom visits due to the on-going pandemic, so Defendant spoke with the Corrections Complaint Examiner (CCE) and both agreed that Malwitz could participate in Zoom visits pending completion of Domestic Violence Programming. *Id*., ¶20. The Office of the Secretary issued a final decision on August 25, 2021 agreeing with the dismissal of the inmate complaint and noting that Malwitz could have Zoom visits pending completion of Domestic Violence Programming. *Id*., ¶23.

The following day, on August 26, 2021, the institution updated Malwitz's prison records to note that he was allowed to have Zoom visits with his wife pending completion of Domestic Violence Programming. *Id*., ¶27. That same day, Malwitz was made aware of the update. *Id*., ¶¶24-25. Despite the approved Zoom visits, Malwitz had no visitors. *Id*., ¶¶26, 28-29. Malwitz still has the option to request reconsideration of in-person visits based on changed circumstances. *Id*., ¶27.

## SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Ames v. Home Depot U.S.A., Inc.*, 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *Anderson*, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The party asserting that a fact is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

## ANALYSIS

As an initial argument, Defendant states that he was not personally involved in the decision to deny Malwitz in-person visitation; that CPS Gessner made that decision. Dkt. No. 37 at 5-7; *see also Burks v. Raemisch*, 555 F.3d 592, 595-96 (7th Cir. 2009) (noting that §1983 limits liability to public employees who are personally responsible for a constitutional violation). Defendant also argues that his role in this case was limited to dismissing an inmate complaint, and that is not a proper basis for §1983 liability. Dkt. No. 37 at 5-7; *see also George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007) ("Ruling against a prisoner on an administrative complaint does not cause or

5

contribute to the violation."). Because Defendant has also fully briefed the First Amendment claim, the Court will analyze the issue on the merits, eliminating any need for Malwitz to attempt amending his complaint or filing a new lawsuit on the same facts against a different defendant.

Prisoners have no independent constitutional right to visitation or to particular forms of visitation, and prison officials have considerable discretion in determining the time, place, duration and conditions of visitation. *Kentucky Department of Corrections v. Thompson*, 490 U.S. 454, 460 (1989). Indeed, freedom of association is among the rights "least compatible with incarceration" and "[s]ome curtailment of that freedom must be expected in the prison context." *Overton v. Bazzetta*, 539 U.S. 126, 131 (2003). But prison officials can violate the Constitution "by permanently or arbitrarily denying an inmate visits with family members." *Easterling v. Thurmer*, 880 F.3d 319, 323 (7th Cir. 2018). The over-arching question is whether the visitation restriction was reasonably related to a legitimate penological purpose. *Overton*, 539 U.S. at 132 (citing *Turner v. Safley*, 482 U.S. 78, 89-91 (1987)).

To determine whether a visitation restriction is reasonably related to a legitimate penological purpose, the Court analyzes: (1) whether a rational connection exists between the visitation restriction and a legitimate penological purpose; (2) whether alternative means of exercising the right are available; (3) what effect accommodating the right would have on guards, other prisoners, and prison resources generally; and (4) whether ready, easy-to-implement alternatives exist that would accommodate the prisoner's rights. *Id.* The first factor "can act as a threshold factor regardless which way it cuts." *Singer v. Raemisch*, 593 F.3d 529, 534 (7th Cir. 2010). "Where…there is only minimal evidence suggesting that a prison's regulation is irrational, running through each factor at length is unnecessary." *Mays v. Springborn*, 575 F.3d 643, 648 (7th Cir. 2009). "The burden [] is not on the State to prove the validity of prison regulations but

on the prisoner to disprove it." *Overton*, 539 U.S. at 132. Indeed, once the State articulates a "plausible explanation" for the visitation restriction, the burden shifts to the plaintiff to present evidence undermining the State's explanation. *Singer*, 593 F.3d at 536-37.

I. **Defendant Has Articulated a Plausible Explanation for the In-Person Visitation Restriction.**

The record confirms that all four legal factors used to determine whether a visitation restriction is reasonably related to a legitimate penological interest cut in favor of Defendant. The first, and arguably most important, factor cuts heavily in favor of Defendant. The Seventh Circuit has held that protecting victims from further harm is a legitimate state interest. *See Overton*, 539 U.S. at 170; *see also Stojanovic v. Humphreys*, 309 Fed. Appx. 48, 51 (7th Cir. 2009). Defendant explains that, in order to protect Malwitz's battered wife from further victimization, Malwitz could not have in-person visits with her until he completed Domestic Violence Programming. Defendant further explains that domestic violence "is a crime on a different level," meaning it is subtle and specific to the relationship between two people, so it requires special attention through Domestic Violence Programming training. *See* Dkt. No. 37 at 10. Defendant has therefore articulated a legitimate penological purpose in imposing the in-person visitation restriction.

Defendant has also articulated a rational relationship between the restriction and the legitimate penological purpose. The ban on in-person visits prevents any additional physical and/or verbal abuse until Malwitz has the proper tools to regulate his behavior. *See e.g. Vega v. Tegels*, No. 17-CV-66-BBC, 2018 WL 3448242, at *6 (W.D. Wis. July 17, 2018) (noting that "without successful completion of domestic violence programming, the plaintiff will not have the tools and understanding of how his prior assaultive behavior affected [the victim], creating a high risk that he will continue negative patterns and further victimize her."). Further, domestic abuse (especially verbal abuse) is better monitored through a phone call or a zoom visit that can be

quickly terminated by hanging up. *See id.* (noting that "there is no risk of threatening non-verbal communication on a telephone call and [the victim] can more easily hang up the telephone than leave a visitation room if she feels threatened."). The first factor therefore cuts heavily in favor of Defendant.

The second and fourth factors also cut heavily in favor of Defendant. The undisputed evidence shows that alternative means of exercising the right have been available to Malwitz throughout his incarceration. Malwitz was approved to make phone calls and write letters the entire time he was incarcerated. He was then approved for Zoom visits starting in August 2021. These are adequate alternatives means of exercising his rights. *See e.g. Bates v. Bartel*, No. 17-CV-250-JDP, 2018 WL 4518031, at *4 (W.D. Wis. Sept. 20, 2018) ("It is undisputed that [the plaintiff] was able to communicate with [his wife] by mail or phone, so he had alternative, if less intimate, ways to maintain his relationship with her."). Further, Malwitz has not articulated any other ready, easy-to-implement alternatives that would accommodate his rights. In fact, Malwitz takes the position that he *only* wants in-person visits; that no other alternatives are adequate to kindle the "health and wellness" of his marriage. *See* Dkt. No. 46 at 1 & 3. But "[a]lternatives to visitation need not be ideal…they need only be available." *Overton*, 539 U.S. at 135-36. Here, it is undisputed that alternatives were available. *See* Dkt. No. 48, ¶16.

Finally, the third factor also cuts in favor of Defendant. Defendant states that accommodating in-person visits would generally have a negative impact on guards, other prisoners, and prison resources because it would require staff to closely monitor the interaction between Malwitz and his wife. This would divert staff time and resources away from other institution needs. *See Stojanovic*, 309 F. App'x at 52 ("[W]e are confident that accommodating [the plaintiff's] interest would substantially impact prison resources by steering resources toward

8

[the victim's] safety and therefore hindering the guards' ability to protect other visitors and inmates"). Defendant states that closely monitoring in-person visits takes resources away from larger prison security concerns, and the Court must accord substantial deference to the professional judgment of prison administrators in matters related to prison security. *See Overton,* 539 U.S. at 132. Thus, the third factor also cuts in favor of Defendant.

## II. Malwitz Has Not Presented Evidence Undermining Defendant's Stated Reasons for the In-person Visitation Restriction.

Malwitz's attempts to undercut Defendant's reasons for the in-person visitation restriction do suffice to carry his burden in challenging Defendant's position. First, Malwitz argues that the domestic violence findings from his revocation summary were "fabricated" by his wife "due to her consuming alcohol." Dkt. No. 43. But Malwitz cannot use this lawsuit to challenge facts found in a different criminal matter. *See Heck v. Humphrey*, 512 U.S. 477, 485 (1994) ("[C]ivil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments…"). Malwitz's extended supervision revocation still stands; therefore, it was reasonable and acceptable for prison officials to rely on the facts from the revocation summary to restrict in-person visits.

Next, Malwitz argues that, on or around September 3, 2020, a state court judge approved visitation with his wife at the jail, so that ruling should have also applied at the institution. *See* Dkt. No. 49, ¶¶5-6. But Malwitz has not provided any details about the circumstances under which his prior visits were approved, and in any case, that was *before* he was revoked (on September 29, 2020) and ordered to complete Domestic Violence Programming. *See e.g. Vega*, 2018 WL 3448242, at *6 ("[E]ven if plaintiff was allowed to visit with his wife at the jail, that fact is irrelevant in deciding whether defendants had a rational penological reason for denying [] visitation…after he had been convicted and ordered to participate in domestic violence

9

programming.") In other words, Malwitz's circumstances had changed by the time he arrived at the institution.

Finally, Malwitz baldly claims "he may never be able to complete" the Domestic Violence Programming because of limited space in the program. *See* Dkt. No. 46 at 3; *see also* Dkt. No. 49, ¶¶17-19. But Malwitz offers no credible evidence to support this assertion and the Court will not accept his unsupported speculation. His suspicion or fear is not enough. *See e.g. Vega*, 2018 WL 3448242, at *7 (noting that "although plaintiff believes that he will be denied visitation for five years, which would exceed the full length of his incarceration and result in a permanent denial of visitation," he had no evidence to support his assertion apart from his apprehension that defendant "said it could take five years" before enrollment in Domestic Violence Programming was available).

Because Malwitz has not offered sufficient evidence to undercut Defendant's legitimate penological purpose for the in-person visitation restriction, the Court will grant Defendant's motion for summary judgment, deny Malwitz's motion for summary judgment, and dismiss the case.

## CONCLUSION

For the reasons stated above, **IT IS HEREBY ORDERED** that Plaintiff's motion for extension of time (Dkt. No. 51) is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant's motion for summary judgment (Dkt. No. 36) is **GRANTED**; Plaintiff's motion for summary judgment (Dkt. No. 45) is **DENIED**; and the case is **DISMISSED**. The Clerk's office shall enter judgment accordingly.

Dated at Milwaukee, Wisconsin on October 25, 2022.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge

This order and the judgment to follow are final. Plaintiff may appeal this Court's decision to the Court of Appeals for the Seventh Circuit by filing in this Court a notice of appeal within **30 days** of the entry of judgment. *See* Fed. R. App. P. 3, 4. This Court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Fed. R. App. P. 4(a)(5)(A). If Plaintiff appeals, he will be liable for the $505.00 appellate filing fee regardless of the appeal's outcome. If Plaintiff seeks leave to proceed *in forma pauperis* on appeal, he must file a motion for leave to proceed *in forma pauperis* with this Court. *See* Fed. R. App. P. 24(a)(1). Plaintiff may be assessed another "strike" by the Court of Appeals if his appeal is found to be non-meritorious. *See* 28 U.S.C. §1915(g). If Plaintiff accumulates three strikes, he will not be able to file an action in federal court (except as a petition for habeas corpus relief) without prepaying the filing fee unless he demonstrates that he is in imminent danger of serous physical injury. *Id.*

Under certain circumstances, a party may ask this Court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of judgment. The Court cannot extend these deadlines. *See* Fed. R. Civ. P. 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.